UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

IN RE:                                                      Case No. 11-04869-jrh

KEVIN J. IMHOFF,                                            Chapter 7 Case

                    Debtor                              Hon. Jeffrey R. Hughes

_____/

PFS INVESTMENTS, INC.
 a Georgia corporation,                                     Adv. Proc. No. _____

                    Plaintiff,

v.

KEVIN J. IMHOFF, an individual,

                    Defendant.

_____/

### PLAINTIFF'S COMPLAINT OBJECTING TO DISCHARGE OF DEFENDANT AND CHAPTER 7 DEBTOR, KEVIN J. IMHOFF

      Plaintiff, PFS Investments, Inc., by and through its undersigned counsel, for its Complaint objecting to the grant of a discharge to the Defendant and Chapter 7 debtor herein, Kevin J. Imhoff, pursuant to 11 U.S.C. §§ 727(a)(2) and 727(a)(4) states as follows:

      1.      This is a Complaint objecting to the grant of a discharge by the United States Bankruptcy Court for the Western District of Michigan to the Chapter 7 debtor herein pursuant to the applicable provisions of sections 727(a) of the Federal Bankruptcy Code and Rule 4004 of the Federal Rules of Bankruptcy Procedure.

### PARTIES AND JURISDICTION

      2.      Plaintiff, PFS Investments, Inc., is a corporation organized and existing under the laws of the State of Georgia and maintains its corporate headquarters at 3120 Breckinridge

Boulevard, Duluth, Georgia 30099 ("PFSI").  PFSI is qualified to conduct business and conducts business in the State of Michigan.

3.      Defendant, Kevin J. Imhoff, is an individual currently residing at 1534 Settlers Hill Drive, Lansing, Michigan 48917 ("K. Imhoff").  K. Imhoff is the husband of Ruth Imhoff, who also resides at 1534 Settlers Hill Drive, Lansing, Michigan 48917 ("R. Imhoff").

4.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  Venue of this adversary proceeding is proper in this Court under 11 U.S.C. § 1409(a).

5.      This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J).

## STATEMENT OF RELEVANT FACTS

6.      PFSI is a broker-dealer registered with the Securities and Exchange Commission under the Investment Company Act of 1940 and is a member of the Financial Industry Regulatory Authority ("FINRA").

7.      The activities of PFSI and its registered representatives are regulated by FINRA, which is the largest non-governmental regulator for all securities firms doing business with the American public.

8.      In March, 1986, PFSI retained the services of K. Imhoff as registered representative.  As a registered representative, K. Imhoff had the ability to sell securities products offered by PFSI and to receive commissions for doing so.  K. Imhoff earned commissions form PFSI while he was associated with PFSI.  In 1992, K. Imhoff executed a written agreement with one of PFSI's affiliate companies entitled the "Basic Agreement" defining, in part, his duties as registered representative of PFSI (the "Basic Agreement").

Pursuant to the terms of the Basic Agreement, and related documents, K. Imhoff was required to sell only investment products approved in advance by PFSI.  A copy of the Basic Agreement is attached hereto as <u>Exhibit 1</u>.  PFSI has never approved condominiums or any other real estate as an investment for its registered representatives to offer to clients.

9.     Notwithstanding the prohibition contained in the Basic Agreement and related documents, beginning sometime in 2005, K. Imhoff began a business venture which involved the purchase of condominium units located in the State of Florida by K. Imhoff and R. Imhoff and the sale to PFSI customers of those condominium units for investment purposes.  K. Imhoff sold several such units to these customers without advising PFSI of his activities.  In periodic written certifications submitted by K. Imhoff to PFSI and to FINRA during the period from 2005 through 2007, K. Imhoff failed to disclose to PFSI these sales of condominium units to PFSI customers, as he was required to do, and affirmatively stated that he was not involved in any business activity that PFSI had not approved.  Copies of these documents are attached hereto as <u>Exhibit 2</u>.

10.     In August, 2008, K. Imhoff resigned as a registered representative of PFSI.  Upon K. Imhoff's resignation, PFSI transferred its own customers, who had previously been advised by K. Imhoff, to other individual registered representatives of PFSI with the knowledge and consent of K. Imhoff, although no such consent was required by contract or applicable law.

11.     Beginning in October, 2008, certain individual customers of PFSI who had purchased residential condominium units in Florida as investments from K. Imhoff contacted PFSI concerning these investments, stating that K. Imhoff had defrauded them in connection with these purchases and that the value of these investments had drastically declined after their purchase.  A number of these customers have asserted claims against PFSI and K. Imhoff for

their pecuniary losses caused by the allegedly wrongful actions of K. Imhoff in connection with these condominium sales.

12.    The following PFSI customers have asserted claims against K. Imhoff and/or PFSI arising from the sales of Florida condominium units unauthorized by PFSI by K. Imhoff during the period from September 2006 to April 2007:

    (a)    Margarita Gauna ("M. Gauna")

    (b)    Koyla Gauna ("K. Gauna")

    (c)    Elida Sepulveda ("E. Sepulveda")

    (d)    Roger Siminski ("R. Siminski")

    (e)    Toni Siminski ("T. Siminski")

    (f)    Chris Pryor ("C. Pryor")

    (g)    Kenyatta Pryor ("K. Pryor")

    (h)    Ruth Pryor ("R. Pryor")

    (i)    Melvin Pryor ("M. Pryor")

    (j)    Samuel Duncan ("S. Duncan")

    (k)    Dorothy Duncan ("D. Duncan")

13.    On April 28, 2011, K. Imhoff commenced this Chapter 7 case by filing a voluntary petition with this Court.  Thereafter, this Court appointed Kelly Hagan as the trustee in bankruptcy responsible for the administration of this Chapter 7 case.

14.    In his original bankruptcy Schedules and Statement of Affairs filed in this Chapter 7 case on or about May 12, 2011 (the "Original Filings"), K. Imhoff made the following statements under penalty of perjury, affirming that he had read the statements and answers contained therein and that they were "true and correct."  True and complete copies of the

4

Original Filings are attached hereto as <u>Exhibit 3</u>.  In these documents, K. Imhoff declared the following:

        (a)    In Schedule I (Current Income of Individual Debtor), K. Imhoff lists his occupation as a "financial advisor" for Blue Diamond Enterprises, LLC, with an address of 924 Centennial Way, Suite 400, Lansing, Michigan 48917 ("Blue Diamond").  He declared that his only monthly income was $300.00 from estimated monthly distributions from a separate entity, K&R Imhoff Enterprises, LLC ("Enterprises").

        (b)    Also in Schedule I, he declared that his only monthly expenditures were $260.00 as his "contribution to household expenses."  Consequently, K. Imhoff declared that his monthly net income amounted to only $40.00.

        (c)    In Schedule B (Personal Property), K. Imhoff declared that he was a "5% member" of Enterprises and an "80% member" of Blue Diamond.  K. Imhoff claimed in his Schedule C (Property Claimed as Exempt) that his membership interests in these two limited liability companies were valued at $0 and were exempt under 11 U.S.C. § 522(d)(5).  Upon information and belief, the remaining membership interests in these two companies are held by R. Imhoff.

        (d)    In his Statement of Financial Affairs, K. Imhoff declared in response to Question #1 (Income from Employment or Operation of Business), that he received the following distributions from Enterprises and Blue Diamond during the years 2009 – 2011:

        (i)    Distributions in 2009:
- K&R Imhoff Enterprises, LLC = $0.00
- Blue Diamond Enterprises, LLC = $40,603.00

        (ii)    Distributions in 2010:
- K&R Imhoff Enterprises, LLC = $845.00
- Blue Diamond Enterprises, LLC = $33,320.00

      (iii)    Distributions in 2011:
- K&R Imhoff Enterprises, LLC = $1,195.00
- Blue Diamond Enterprises, LLC = $7,520.00

15.     On November 9, 2011, PFSI took the bankruptcy court-ordered examination of R. Imhoff in Grand Rapids, Michigan pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.  The next day, PFSI took the bankruptcy court-ordered examination of K. Imhoff, also in Grand Rapids, Michigan (the "K. Imhoff Examination").

16.     On December 6, 2011, K. Imhoff, acting through his counsel, filed with this Court the following documents, all sworn to by him under penalty of perjury:

      (a)    First Amendment to Schedule B – Personal Property;

      (b)    First Amendment to Schedule C – Property Claimed as Exempt;

      (c)    First Amendment to Schedule I – Current Income;

      (d)    First Amendment to Schedule J – Current Expenditures; and

      (e)    Amended Statement of Financial Affairs.

True and complete copies of these amended filings, collectively referred to herein as the "Amended Filings," are attached hereto as Exhibit 4.

17.     In the Amended Filings, K. Imhoff made the following statements under penalty of perjury, affirming that he had read the statements and answers contained therein and that they were "true and accurate."  In these documents, K. Imhoff declared the following:

      (a)    In Amended Schedule B, K. Imhoff lists in partial response to Question 2 joint ownership with his wife of a "pass through account for HBW income passed through to Blue Diamond" maintained at Fifth Third Bank.  He also states in this response that "funds belong to Blue Diamond."

(b)    In Amended Schedule B, K. Imhoff in partial response to Question 3, declares that he holds an eighty percent (80%) membership interest in Blue Diamond and that interest is now valued at $1.00.

(c)    In Amended Schedule B, K. Imhoff states that he holds a five percent (5%) interest in Enterprises and that interest is now valued at $1.00.

(d)    In Amended Schedule B, K. Imhoff now states that he is entitled to an $8,000.00 federal income tax refund and a $960.00 Michigan income tax refund.  These assets were general described in the Initial Filings but their value was stated to be "unknown."

(e)    In Amended Schedule B, K. Imhoff now states that he holds claims against "Primerica Financial Services" in an estimated amount of $10 million.  In the Original Filings, K. Imhoff estimated these claims at $500,000.00.

(f)    In his Amended Statement of Financial Affairs, K. Imhoff now states that he received additional dividend and interest income from Blue Diamond, Enterprises and Fifth Third Bank during 2010 which were not disclosed in the Original Filings.

(g)    In his Amended Statement of Financial Affairs, K. Imhoff now identifies certain gifts which were not disclosed in the Original Filings.

(h)    In his Amended Statement of Financial Affairs, K. Imhoff in response to Question 10 now states as follows:

(i)    A condominium unit in Florida was sold in December, 2009, to American Neuropsychiatry Association of Albany, Georgia for $265,000 and not for $128,853 as declared in the Original Filings.

(ii)     R. Imhoff was assigned an additional 25% membership interest in Enterprises in January 2010 in return for her $100,000 capital contribution to Enterprises.  This transfer was not declared in the Original Filings.

(iii)    In March and December, 2010, K. Imhoff endorsed tax refund checks in undisclosed amounts for the benefit of R. Imhoff.  These transfers were not disclosed in the Original Filings.

(i)     In his Amended Statement of Financial Affairs, K. Imhoff in response to Question 18 now includes the following responses to businesses that were not included in the Original Filings:

(i)     In 2005 and 2006, K. Imhoff was engaged in the business of selling condominium units in Florida through the following limited liability companies:  Emerald Beach 1232, LLC, Emerald Cove 10C, LLC, Emerald Cove 35D, LLC, Emerald Cove 36E, LLC.

(ii)    From 2006 through 2009, K. Imhoff was engaged in the business of owning and renting condominium units in Florida through the following limited liability companies:  Splendid Vacations 2-509, LLC, Splendid Vacations 2-409, LLC, Splendid Vacations EB1133, LLC, Splendid Vacations EB2430, LLC, Splendid Vacations EB2436, LLC, Splendid Vacations EB627, LLC.

### The Commission Transfers

18.    In an examination of K. Imhoff pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure taken by PFSI on November 10, 2011 (the "K. Imhoff Examination"), K. Imhoff testified that immediately after he resigned from Primerica, he accepted a position as

sales representative for two related companies, (i) HBW Insurance and Financial Services, Inc., and (ii) HBW Securities, LLC (collectively, referred to herein as "HBW").

19.     Upon information and belief, since sometime in 2008, all commissions that K. Imhoff earned from HBW from the sales of securities on HBW's behalf were paid by HBW to K. Imhoff, who subsequently transferred those sums to Blue Diamond.  Upon further information and belief, since sometime in 2008, all commissions that K. Imhoff earned from HBW from the sales of insurance products on behalf of HBW were deposited by HBW in a bank account maintained by Blue Diamond pursuant to the direction of K. Imhoff.  Upon further information and belief, all commissions payable and paid by HBW to K. Imhoff from the sales of securities and insurance products from 2008 up to the Chapter 7 petition date of April 28, 2011 (the "Commission Transfers"), and thereafter were, and continue to be, income realized by K. Imhoff, which income was in amounts substantially in excess of the distributions made by Blue Diamond to K. Imhoff during this same period.  Moreover, none of these comments have been disclosed by K. Imhoff in response to Question 1 on Schedule I (either originally or as amended), which specifically requires disclosures of "commissions."

20.     The Schedules and Statement of Affairs filed by K. Imhoff in this case on May 12, 2011 (the "Original Filings"), omitted any references to the Commission Transfers.

21.     Although the Amended Statement of Affairs filed by K. Imhoff describes the Fifth Third Bank "pass through account" in general terms, the Amended Filings do not describe with any particularity the Commission Transfers, nor do they disclose the amount of the Commission Transfers.

22.     Upon information and belief, the Commission Transfers made by K. Imhoff constituted transfers of "property of the debtor."  Upon information and belief, these funds were

transferred by K. Imhoff within one year of the commencement of this Chapter 7 case with the intent to hinder, delay or defraud a creditor or an officer of K. Imhoff's bankruptcy estate charged with custody of property under the applicable provisions of the Federal Bankruptcy Code.

23.     Upon information and belief, the aggregate amount of the Commission Transfers made in the year preceding the commencement of this Chapter 7 case was approximately $143,000.00.

### The Martindale Transfer and the Enterprises Transfer

24.     In addition to the Commission Transfers, the following transfers of funds outside of the ordinary course of K. Imhoff's business were made by Blue Diamond, which transfers were not reported in K. Imhoff's Original Filings:

(a)     On or about April 27, 2011 (one day before this voluntary Chapter 7 case was commenced), Blue Diamond paid to Michael Martindale, an individual and long-time friend of K. Imhoff and R. Imhoff, the sum of $13,500.00 as an alleged advance for wages for the months of May through December, 2011 (the "Martindale Transfer").

(b)     Also on or about April 27, 2011, Blue Diamond paid to Enterprises, the sum of $22,000.00 as an advance payment for rent to become due during the period from May 1, 2011 through December 31, 2011, under a lease of commercial office space owned by Enterprises and leased to Blue Diamond (the "Enterprises April 27th Transfer").

(c)     In each month in the year prior to the commencement of this Chapter 7 case, Blue Diamond made a "lease payment" of $2,750.00 to Enterprises.  Upon information and belief, this "lease payment" was arbitrarily determined by R. Imhoff in an effort to divert K. Imhoff's commission income out of Blue Diamond and into Enterprises and to allow these

diverted funds to accumulate in an entity owned and controlled by R. Imhoff.  Upon further information and belief, the amount of each monthly lease payment was fixed at $2,750.00, notwithstanding that Enterprises' only expense is payment of a monthly mortgage payment for office space amounting to $1,151.00 per month, and provides no goods or services to Blue Diamond (the "Enterprises Monthly Lease Transfers").  The Enterprises April 27th Transfer and the Enterprises Monthly Lease Transfers are collectively referred to herein as the "Enterprises Transfers."

25.    Upon information and belief, the only monies received by Blue Diamond during the one-year period prior to April 28, 2011, were those generated by sales commissions paid by HBW to or for the benefit of K. Imhoff as a result of sales of securities and insurance products made by him.

26.    Upon information and belief, K. Imhoff caused Blue Diamond to transfer the monies described in Paragraph 24 herein to Michael Martindale and Enterprises, which monies constituted "property of the debtor," either because the funds in Blue Diamond were all commission payments belonging solely to K. Imhoff and/or because K. Imhoff has improperly and wrongfully disregarded the corporate form of Blue Diamond, and has used its assets to pay his own personal expenses, thereby causing Blue Diamond to be an alter ego of K. Imhoff.  Upon information and belief, these funds were transferred by K. Imhoff within one year of the commencement of this Chapter 7 case with the intent to hinder, delay or defraud a creditor or an officer of K. Imhoff's bankruptcy estate charged with custody of property under the applicable provisions of the Federal Bankruptcy Code.

27.    The Original Filings and the Amended Filings omit any references to the Martindale Transfer and the Enterprises Transfers.

## **The Blue Diamond Assignment**

28.     Upon information and belief, on or about February 4, 2011, K. Imhoff executed and delivered to R. Imhoff a written assignment of all of his right, title and interest in Blue Diamond to the Living Trust of R. Imhoff (the "Blue Diamond Assignment").  A copy of the Blue Diamond Assignment is attached hereto as Exhibit 5.

29.     The Original Filings and the Amended Filings omit any reference to the Blue Diamond Assignment.

30.     In the Original Filings and in the Amended Filings, K. Imhoff declares under penalty of perjury that he owns an eighty percent (80%) membership interest in Blue Diamond.

31.     Upon information and belief, if the Blue Diamond Assignment was effective upon its delivery to the Trust of R. Imhoff, then the Blue Diamond Assignment made by K. Imhoff constituted a transfer of "property of the debtor."  Upon further information and belief, K. Imhoff made this transfer with the intent to hinder, delay or defraud a creditor or an officer of K. Imhoff's bankruptcy estate charged with custody of property under the applicable provisions of the Federal Bankruptcy Code.

32.     Under section 727(a)(4)(A) of the Bankruptcy Code, an individual Chapter 7 debtor such as K. Imhoff will be denied a general discharge of his prepetition debts unless the debtor "knowingly and fraudulently, in or in connection with the case, made a false oath or account."

33.     The Original Filings and the Amended Filings were signed by K. Imhoff under oath.

34.     The omissions by K. Imhoff from the Original Filings and the Amended Filings of (i) the Commission Transfers; (ii) the Martindale Transfer; (iii) the Enterprises Transfer; and (iv)

the Blue Diamond Assignment (collectively, the "Omissions") all were false and were made by K. Imhoff in or in connection with his Chapter 7 case.

35.     At the times that K. Imhoff executed the Original Filings and the Amended Filings, K. Imhoff knew or should have known that the Omissions were false.

36.     Upon information and belief, K. Imhoff made the Omissions fraudulently and/or recklessly without regard to their truth, and made the Omissions with intent to hinder, delay or defraud a creditor of his bankruptcy estate and/or an officer of his bankruptcy estate.

37.     The Omissions materially related to K. Imhoff's bankruptcy estate.

### False Oath re: Affirmative Representations

38.     In addition to the Omissions described herein, K. Imhoff made other false oaths/accounts in or in connection with this Chapter 7 case. These false oaths/accounts include the following affirmative misrepresentations which K. Imhoff made knowingly and fraudulently (or with reckless disregard for the truth of these statements), which misrepresentations are hereinafter collectively referred to as the "Affirmative Misrepresentations."

39.     The first Affirmative Misrepresentation is the statement made by K. Imhoff under oath in Schedule J (Current Expenditures of Individual Debtor) of the Original Filings and the Amended Filings that his monthly expenses amount to only $260.00, which is defined in these filings as "contribution to household expenses."

40.     In Schedule B (Personal Property) in the Original Filings and the Amended Filings, K. Imhoff states that he owns a 50% interest in "furniture, furnishings, appliances [and] household tools" jointly with R. Imhoff and that his interest is valued at $5,000.00.

41.     Upon information and belief, K. Imhoff has personal expenses significantly in excess of $260.00 per month, e.g., legal expenses, funding of his individual retirement accounts

(the value of which is stated in his Schedule B as exceeding $354,000), educational expenses, and health insurance.

42.     Upon information and belief, these monthly expenses are paid primarily if not exclusively by distributions from cash and other assets held by Blue Diamond, the ultimate sources of which are the Commission Transfers.

43.     The second Affirmative Misrepresentation is the statement made by K. Imhoff under oath in Schedule B (Personal Property) of the Original Filings and the Amended Filings that the value of his 80% interest in Blue Diamond was only $1.00 as of April 28, 2011.

44.     Upon information and belief, the assets of Blue Diamond consist primarily, if not exclusively, of the Commission Transfers, which amounted to $143,919.95 in the one year prior to the commencement of this Chapter 7 case.

45.     Upon information and belief, the net value of the assets in Blue Diamond as of the date on which this Chapter 7 case was commenced amounted to the approximate sum of $41,384.00 as of April 28, 2011.  Upon information and belief, the value of K. Imhoff's interest in Blue Diamond as of April 28, 2011, amounted to approximately $33,107.00.

46.     The third Affirmative Misrepresentation is the statement made by K. Imhoff under oath in Schedule B (Personal Property) of the Original Filings and the Amended Filings that the value of his 5% interest in Enterprises was only $1.00 as of April 28, 2011.

47.     Upon information and belief, in January, 2010, K. Imhoff surrendered 20% of his formerly 25% equity interest in Enterprises in January, 2010, upon a capital investment of $100,000 in cash by R. Imhoff into Enterprises, with the result that the equity interest of R. Imhoff in Enterprises increased by 20% to her present 95% interest.  Consequently, K. Imhoff and R. Imhoff valued a 5% equity interest at the time of this transaction in January 2010 to be

$25,000.00. Further, as of April 28, 2011, Enterprises held approximately $88,356.71 in bank accounts owned by Enterprises.

48.    Upon information and belief, the assets of Enterprises known to PFSI are a fee interest in an office condominium unit in Lansing, Michigan and cash in various bank accounts. Within the one year period prior to the commencement of this Chapter 7 case, the sum of $52,520.00 was transferred by K. Imhoff and/or related entities to Enterprises.

49.    As a consequence of the foregoing, the value of K. Imhoff's 5% equity interest in Enterprises as of April 28, 2011, amounted to a sum substantially in excess of $1.00.

50.    The fourth Affirmative Misrepresentation is the statement made by K. Imhoff under oath in Schedule B (Personal Property) of the Original Filings and the Amended Filings that there is "no current value" attributable to his "contingent interest as beneficiary" of a trust established by R. Imhoff (the "R. Imhoff Trust").

51.    Upon information and belief, the R. Imhoff Trust has current assets consisting primarily of cash in the approximate sum of $250,000.

52.    As a consequence of the foregoing, the value of K. Imhoff's interest in the R. Imhoff Trust as of April 28, 2011, amounted to a sum in excess of $0.

53.    The Affirmative Misrepresentations by K. Imhoff in the Original Filings and the Amended Filings all were false and were made by K. Imhoff in or in connection with his Chapter 7 case.

54.    At the times that K. Imhoff executed the Original Filings and the Amended Filings, K. Imhoff knew or should have known that the Affirmative Misrepresentations were false.

55.     Upon information and belief, K. Imhoff made the Affirmative Misrepresentations fraudulently and/or recklessly without regard to their truth and made them with intent to hinder, delay or defraud a creditor of his bankruptcy estate and/or an officer of his bankruptcy estate.

56.     The Affirmative Misrepresentations materially related to K. Imhoff's bankruptcy estate.

WHEREFORE, Plaintiff PFS Investments, Inc., respectfully requests that this Court enter an Order (i) denying the Defendant, Kevin J. Imhoff, a bankruptcy discharge in this case under the applicable provisions of 727(a)(2) and 727(a)(4) of the Federal Bankruptcy Code; and (ii) granting such other and further relief as may be just and proper under the circumstances.

Dated:  December 13, 2011

Respectfully submitted,

BARNES & THORNBURG, LLP
Co-counsel to Plaintiff, PFS
Investments, Inc.


By:___/s/Patrick E. Mears_____
        Patrick E. Mears (P 31316)
Business Address:
171 Monroe Avenue, N.W., Suite 1000
Grand Rapids, Michigan 49503
Telephone:  616-742-3936